The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit.  We did an OEA thing downstairs. So welcome to the 4th Circuit. We have two arguments today. First case is Overbey. Mr. Wolfe. Good morning. May it please the Court, Dan Wolfe for Plaintiffs' Appellants. I'd like to start by making two points that I think are not controversial. First, when the police force uses force against its citizens, that is both a public interest and newsworthy. Second, if the City of Baltimore or any government, for that matter, were to try to quell speech about the police use of force through legislative action or executive edict, the courts would strike that down as violative of those citizens' First Amendment rights to speak freely about matters of public importance. Which brings us to the central question in this case, which is whether a government may, under the guise of contract, purchase the very silence that the First Amendment prohibits it from prohibiting or from silencing as a matter of legislative action or executive edict. And the answer is no. And I suggest to this panel that this case asks this Court to break no new ground. The Marchetti case from 1972 looked at a similar issue. The question there was, could a former CIA agent say certain things in public about information learned by virtue of his employment with the CIA? And this Court said very clearly that there are limits on what government may, quote unquote, contractually or otherwise, limit an individual from saying. Now in that case, an employment case, there was an employment relationship between the government, the United States, and the individual. And the subject matter was information that was sensitive to national security. So the Court answered the question, in this case, the government may limit the speech of that individual. Here, we don't have a special relationship. Here, the relationship between the police force and the citizens, the plaintiffs who go to court filing civil rights complaints and then entering into settlement agreements, it's an arm's length relationship. But we have a test, I think, Mr. Wolfe, don't we? The first factor, we have two factors to look at primarily. One is whether this is knowing and voluntary. And I understand your position on that. And the second is a balancing of the interest, the government's interest in the rights of the constitutional issue. You agree that's the test, correct? That's the test set forth in Lee James, correct. And you're not suggesting that that's in any way not still binding law that we should apply, correct? We're not suggesting that, correct. Let me ask you, because I'm on the first part of this, what facts do you believe Discovery could possibly uncover that would create a genuine issue of material fact in light of the fact that your client was represented by a lawyer at the time this agreement was entered into, in light of the fact that the contract stated there was a knowing and voluntary agreement on that issue? So, Judge Qualbaum, I'm going to answer the question, and then I'd like to make a second point to that. Just answer it first. So, the standard is that courts do not presume, and this is true even under the Lee James standard, we don't presume lightly waivers of constitutional rights. The government must show by clear and convincing evidence that it has been knowingly and voluntarily waived. So, what we came forward with was a declaration from one of my clients, Ms. Overby, saying that she didn't fully understand the scope of what she was agreeing to, albeit as represented via counsel. So, if we apply the presumption that we don't waive, absent a showing of clear and convincing evidence, and there is a declaration that hasn't been rebutted by a plaintiff who has signed one of these agreements, that she didn't knowingly and voluntarily waive to the extent that the government is now taking the position she did, that puts in dispute a genuine issue. So, you've pled that. You've pled it wasn't knowingly and voluntarily. And so, I understand your position. You think that affidavit or testimony, if in the way of deposition it was developed, would be a genuine issue of material fact in response to the fact that she had counsel and in response to the fact that the contract said it was knowingly and voluntarily. Absolutely, and the case law supports that because if it's just enough to have counsel and it's just enough to sign something that through boilerplate says I'm knowingly and voluntarily giving up all this stuff, then we wouldn't even need the Lake James Standard because that on its face, the four corners of the document itself, would settle the question. And so, we think it's inappropriate to decide this on summary judgment given that declaration. But there's an easier way for this court to resolve this case, and it's really on the second part of the Lake James test, which is legitimate state interest. So, my friend, the city solicitor, will get up and say this is a matter of contract and that this was, like many other contracts that the courts have upheld, this was a knowing waiver. But what the city solicitor cannot come forward with, and which we cannot find in the case law, is a case where there has been upheld by the courts a waiver of information of public interest that serves no purpose to the stated goal of the city, which is closure. Closure is accomplished by my client, Ms. Overby, saying I'll accept the money and I'll drop my lawsuit. That's closure. The other thing that they've advocated in this case is that what they got out of this was freedom from a trial in the court of public opinion. But that, and Marchetti talks about this, that is not a legitimate interest. And that's the best they've been able to do in their briefs is to say we want to be free from trial in the court of public opinion. And this is the distinction between a government agreement and an agreement between purely private parties. You lost on summary, Judge Below. If we were to agree with you, what are you asking us to reverse? And how would this thing look if it were sent back to the district court? So I think what you would do, Judge Floyd, the easiest path would be to rule as a matter of law, make a holding that there is no state in the record, there is no stated legitimate government interest, and therefore, regardless of the factual issues, that as a matter of law, this policy of the city of Baltimore violates the First Amendment. And it's remanded for further proceedings, which would probably be us filing a motion for summary judgment on that point and then getting judgment. Facially or as applied? Well, facially, because as a matter of policy, the city would be unable to articulate any scenario by which avoiding trial in the court of public opinion is a legitimate state interest. It's not like government secrets, national security issues. It's not like grand jury testimony. It's not like bona fide classified business information that might come into the possession of an employee by virtue of his or her employment with the government. Your client could agree, contract or not, not to talk to the press about this, correct? Well, that's true from her perspective. Isn't that what she did here? Let me finish, please. She agreed to not talk or not disparage what the contract says and agreed to accept a certain amount of money for that. That was her agreement that she made with a lawyer at her side. And she now has changed her mind, apparently, or maybe she claims she didn't fully understand. But just like you can agree on your own not to talk, why can't you agree as a matter of contract where you're getting a benefit not to talk? So the problem with the contractual argument that's been put forward by the city, and as I understand your question, Your Honor, is that we can agree to a lot of things. A minor can agree to a land contract, but that's not enforceable as a matter of public policy. I could agree with the mayor of Baltimore that if the city pays me $10,000, I'll vote for the mayor. That wouldn't be upheld as a valid contract. So we posit that the same issue is at play here. When the government's purpose is simply to silence criticism, even if it's in a very narrow case of individuals and not broadly through legislative action, even if it's in a narrow set of circumstances, that is never valid. It's void ab initio, and that's why the contract doesn't win the day for the city. This is what the district court judge didn't understand is that there are limits to what we as a society uphold as valid contracts. And so I gave you a couple of examples of contracts that would not be valid and enforceable if the party that was claiming breach went to enforce it, and the same is true here. What I don't understand from the record, and you can help me out, it seems to me that somebody from the city initiated a conversation about police conduct. Could that be treated as an invited response by your client? If that scenario occurred. Are you referring to the comments of the city solicitor's comments that were reported in the Baltimore Sun? I'm not sure who made the comment. I would argue, Judge Floyd, that that illuminates the problem. It sheds further light on the First Amendment problem, which is when government gets to pull the levers of who can say what. So in this case, I think this is the point you're making, is Ms. Overby's and all the other similarly situated settling plaintiffs, their hands are tied behind their back. The city's are not. So the city can throw punches, which demonstrates now that the one-sidedness is not the First Amendment violation, but the one-sidedness sheds light on the problem of the First Amendment violation. Not only is there a restriction, but now you are subjecting someone to criticisms from the other side, based on the unilateral right of, frankly, the party with greater leverage, to engage in conduct that basically goes to a question of fairness. If we disagree with you on your facial challenge, you still have an as-applied challenge, correct? Well, the facial challenge isn't, yes, as to Ms. Overby. Let's say we disagree with you on the facial challenge. Well, the Baltimore bruise challenge, though, is facial, and that was decided below on a question of standing. If I may, Judge Thacker, just address that briefly. So we've cited a number of judicial gag order cases that demonstrate the interest of the press to obtain information of public interest. But this court's decision, the 2011 decision in the ACLU v. Holder, which in turn relied on the 2008 decision in Stevens v. County of Albemarle, established a but-for standing test. If you have a willing listener, in this case the Baltimore bru, or the press, and you would have a willing speaker but for the agreement that's blocking that flow of information, you have standing. And the bru, paragraph 75 of the complaint alleges, we have, bru, has gone out and tried to talk to settling plaintiffs. But they've told the bru, well, we're not going to talk to you because we fear that the city will take punitive action against us in the form of clawing back some of that, some of our settlement money. Let's go back to my first question. Let's assume that we agreed with you and we reverse the demand. What's the case going to look like? Are you going to try to enforce the settlement or does the settlement fall through and start all over? The settlement will, because there's a separability clause, if you hold that what we're calling the non-disparagement or the gag provision is unconstitutional, then we would go back, we would move for summary. If you rule on the absence of a legitimate state interest, then we would go back and move for summary judgment on the First Amendment claim. If you rule on the factual issues that Judge Quattlebaum was asking about, then we'd go back and have further proceedings on what exactly Ms. Overby and possibly others knew that informed the knowing involuntary part. But the bru's case, the bru's case, and I want to make this clear because Judge Garvis, I think, missed this. The bru's case is in no way dependent on Ms. Overby's experience. Why would that not be the case? I mean, if you have a non-governmental case, you have an agreement to resolve a dispute that has a confidentiality agreement and the issue has high level of public importance. Right. The press doesn't, I mean, they still have that interest. They wouldn't be able to overturn a private contract. Correct. So it seems to me the press's position hinges on the fact that this is a contract with a public entity, which in effect makes it the same issue. If this survives the balancing test, I suspect here that the city thinks there are interests here that should be balanced. And if it's not void as to your client, I mean, what authority is there that the press has rights over beyond that? So I see my time is up, but may I answer your question? Sure. So it all comes down to the difference between the government versus private parties. If you and I, Judge Claude Obama, make an agreement, the case law is clear. The press doesn't have an absolute right to that information. We've made an agreement. Here, though, our position is that the government may never, for the purpose of avoiding trial in the court of public opinion, purchase the silence that it would not otherwise be able to get through legislative or executive action. But that's the same argument you just made about why it was unenforceable as to your client. That's what I'm trying to, I mean, and you can come back and maybe talk about that. But it sounds to me like that's the same issue. It may be a good argument, but it's the same issue that sounds like you were making when Ms. Bethen is over with you. But maybe address that when you come back. I'll do that, Your Honor. Thank you. Mr. Davis. May it please the Court. Good morning, Your Honors. Michael Redman and I represent the appellees in this case. Your Honors, this Court is unlikely to see in any time in the near future a more audacious claim than the claims that are presented in this case. Now, my friend is right. There is ground for agreement between the parties here. And one of those is our absolute agreement that the First Amendment is a rich amendment. It's an important amendment. But it's not a magical amendment. As you suggested in your questions, Judge Qualbom, one of the beauties of the First Amendment is its symmetry. And just as a party has a right to speak under the First Amendment, protected by the First Amendment, a party has a right to remain silent. And a party can assign value to each of those rights in the context of arm's-length dealings. Now, we also agree with our brother over here that government, for many purposes, is different. No question about it. Not just in the First Amendment context, but in a number of different contexts. But really— But I have a question about the First Amendment right to speak, but also to remain silent. That goes back to Judge Floyd's question before about an invited response. Apparently, there was something in the Baltimore Sun or some government speech that they spoke, but then Overby was required to remain silent based on the non-disparagement agreement. What's your response to that disparity? My first response, Judge Thacker, is that that disparity doesn't exist anymore. And I was going to say, this case is probably moot. Because the particular language in the non-disparagement provision that is under attack in this case is no longer being used by the law department of Baltimore City. And, in fact, its use was abandoned before the district court ruled in this case. Now, for, I'm sure, good reasons in their view, they have not bothered to bring explicitly to the court's attention the fact that we're here arguing over a non-disparagement provision that no longer exists and is no longer being used. So does that mean Ms. Overby can now speak freely? Well, Ms. Overby doesn't have a claim against the city and, therefore, is not in a position to decide whether in settling her claims against Baltimore City police officers she wishes to speak or not. Whether Ms. Overby could have responded to answer your questions explicitly, Judge Thacker, whether she could have done something to respond to the attacks under which she was subjected by these online commentators is a question I can't answer. It would require me to reconstruct a history that never existed. I might mention, and I think it's important to mention, this is the first and only case in which Baltimore City has ever exercised its authority to withhold or to seek reimbursement for any settlement amount. And, frankly, the truth of the matter is it so happened that Ms. Overby spoke out in the way that she did in her online comments before her lawyer got the check. And I think my predecessor in office elected to perhaps send a message that that provision was taken seriously by the city, but not before or since has any effort been made to reduce a settlement amount that has been promised in an agreed settlement. I'm sorry. No, please, Judge. If I did, I apologize. But could you, I mean, that's interesting information that may indicate whether or not a mootness issue exists or whether we'll see this in other cases. But with respect to this case, what was Baltimore's interest? There was a lot discussed earlier about how there was no interest other than avoiding a trial in the public opinion. What's your response to that position? What were y'all's interests in this context? Very important response, Judge Qualabong. First of all, please let me say the suggestion in the brief that Baltimore is in some fashion trying to hide discussions of police misconduct is simply not true. There's an allusion to the consent decree that exists between Baltimore City Police and the city and the Department of Justice. In fact, your honors, that consent decree process started when the mayor of Baltimore invited in the Department of Justice to do a soup-to-nuts, top-to-bottom analysis of the problems of the Baltimore City Police Department. There's more. When the administration changed in late 2016 and early 2017, the Department of Justice, before the city and the Department of Justice had finalized the consent decree language, came to Baltimore and said to the mayor-elect, Do you want to get out of this consent decree? We no longer believe in Department of Justice oversight in the reform process of urban police departments. And Baltimore City's authority officials said to the Department of Justice, no. We want you here. We want your assistance. We want your technical assistance in reforming the police department of Baltimore City. Nobody doubts that. Well, let me ask you this, going back to the mootness argument. I kind of get it on the facial challenge. But what about if you treat it as an as-applied challenge? Well, Judge, that's right. It takes care of the facial challenge. And as my brother candidly admitted, if there's no facial challenge, Baltimore Brew is out of the case. And we contend, of course, as you know, Baltimore Brew doesn't have standing in any of that. But here's the problem, Judge Floyd, that you raised in your question. What does the order in favor of the plaintiff look like in this case? You haven't even seen the language that is now being used. Could it actually be that a federal court could inject itself into the arm's length negotiations between parties to settle litigation and tell one of those parties what they may not ask for in negotiations? Wow. Now, my friends have tried to craft this case as a policy. And I think we all know why they did it that way. They want to fit it into sort of existing paradigms of Section 1983 action. Obviously, there's a question of attorney's fees hanging out there, as there always is, in Section 1983 actions. But what is the policy that's being challenged here? You know what it is? If there is a policy at all, it's the policy of the city law department to ask for a non-disparagement provision. And it's settlement agreements. That's what it is. And as my brother admits in his brief, 95% of the people accept it. Sometimes, Judge Qualabong, because they want to be paid for exercising their First Amendment right to remain silent, which is their First Amendment right. Sometimes, maybe they don't think about it. The last thing they want in this case, Judge Floyd, to get back to your question, they don't want to hear from Ms. Overby's lawyer. Because the community has already heard from Ms. Overby's lawyer. Ms. Overby's lawyer, who, by the way, makes his living trying these kinds of cases, former police officer, former Baltimore City police officer, went on the media the day after he received the check from the city. By the way, there were two checks in that envelope, because Ms. Overby's mother was a co-plaintiff in this case. And she also had a non-disparagement clause, represented by the same lawyer. And what Ms. Overby's lawyer, then lawyer, went to the media and said in the Baltimore Sun papers was, well, the city can do this, but I wish they wouldn't. The last thing they want is to talk to her lawyer. Could you go, I'm sorry, I'd like to go back to the issue of the interests of the city. Can we balance against the First Amendment limitations in the agreement? Thank you for bringing me back, Judge Quattlebaum. First of all, the city was not a party to this case. The city and the police department are never parties to cases of this sort. This action, under Maryland law, is brought against the named police officers. The three defendants in this case, in the underlying case, was Ms. Overby against Officer X, Officer Y, and Officer Z. After many years, the practice had become, because Baltimore City is a self-insurer, and so the settlement agreements are sometimes, the city itself is sometimes made a party to the settlement agreement, and sometimes not. It so happens in this case, Baltimore City, Mayor and City Council, became a party to the settlement agreement, but was never a party in the case. The interest is the protection of the reputation of the police officers who, maybe they did something wrong. Maybe they used excessive force. Maybe they committed a constitutional violation by arresting someone without probable cause. Those are the kinds of claims that are brought against police officers all the time. But maybe they didn't. Maybe the use of force was reasonable. And what the purpose of the litigation is, is to have a fact find to make those determinations. And so what happens in a large number of cases, the parties agree that it's in their mutual best interest to resolve the matter. Let's go back to the policy issue. You know, I have a right to vote or not to vote. And I entered into a contract with the mayor. He's going to pay me $10,000 for me not to vote. Is that contract enforceable? Absolutely not. Absolutely not. And why would you say that? Because the public interest, first of all, it's an illegal contract. Under state law and almost certainly under federal law, to the extent there's any federal common law of voting or federal common law of contracting, that would clearly violate the Constitution. Similarly, if there was a policy where the city solicitor said to Hispanic litigants, we don't value your speech the same as we value that of African American speech. So let's hypothetically, when we discuss settlement with litigants against Baltimore City police officers, we added a premium to the settlement value of the case for an African American versus a Hispanic or to a man. Clearly that would run up against any number of constitutional barriers and no one would ever think that you could enforce such a contract. That's not what this case is about. This case is about, I've thought about what is this case really? You know what this case really is? It's a case of unconstitutional conditions. That was your hypothetical, Judge Floyd. Under what circumstances may government condition the exercise of a statutory or constitutional right on giving up some piece of another constitutional or statutory right? That's what this case is. But nobody has a constitutional or statutory right to settle litigation. Whether the defendant is government or non-government, it just doesn't exist in the contemplation of American jurisprudence. So Ms. Overby had the choice, represented by counsel, to go forward with her case before a jury of six, 12 and true. And believe me, Baltimore City jurors have no problem punishing officers through compensatory and punitive damages awarded when officers get out of line. There's no question about it. In fact, that's the bruised argument here, that the city has paid all this money to indemnify police officers over the years, and they want more information about it. Well, they're entitled to get the information. Doesn't the complaint, doesn't the DOJ report indicate there's lots of information in the public sphere about this? Tons of it, Your Honor. Tons of it. The city is committed before the DOJ investigation, but certainly now to transparency. There's no question about it. And so the idea that somehow the city is trying to keep people from talking, nothing could be further from the truth. Your Honor, unless there are any further questions. But isn't that why they withheld half of the settlement amount, because she violated this non-disparagement agreement? She did indeed. So that is keeping her from talking. Not anymore. First of all, it didn't keep her from talking. She settled her case. It kept her from getting half. Exactly. And she had one year after her lawyer opened that envelope and saw there were two checks, one for her mom, full amount that was agreed to, one for Ms. Overby, half the amount that had been agreed to. She had one year from that date to bring an action under state law in state court for the balance of her $63,000 settlement. And she chose not to do that. And you said, I mentioned that that does keep her from talking, and you said not anymore. Can you elaborate on that? Well, again, you're taking me back to what would have been the circumstances. When she saw the really ugly comments that were made about her in the newspaper, they weren't comments by the city, Judge Thacker. I hope that's understood. The word that she felt particularly enraged by was the city solicitor's summary in the memo. It's a one-page memo that goes to the Board of Estimates in order to have the board approve any settlement in excess of $25,000. And the director of that memo that went to the board that is public used the word hostile to describe Ms. Overby's interactions with those officers. Now, look, nobody is here to say that your apartment gets burglarized and you call the police and they show up and you end up getting tased and arrested. That's awful. It should never happen. In Baltimore or anywhere else. But the fact of the matter is these officers did what they thought was appropriate. Ms. Overby and her mom objected. And in our system, what happens is you file a lawsuit. And you can either try that lawsuit and test the truth of your allegations before a jury, or you can settle your lawsuit. So, Judge Thacker, I hope I'm being responsive. Ms. Overby objected really not to the use of the word hostile. If there hadn't been the comments by the members of the public who, again, it was ugly, ugly speech directed at her on the basis of race and income, it was ugly.  And Ms. Overby exercised her First Amendment right to respond to those comments, not to the city. And it took it took them two and a half years to figure out what can we do to help Ms. Overby. And this lawsuit is what they came up with. And like some lawsuits and some settlement agreements would be, you know, absolute prohibition. Here, this is a question, but it seems to me this agreement, you know, had a non-disparagement. But there was an exchange of what the perceived value of that was both ways. But, you know, it in effect gave her the ability to change her mind, which she did. She just didn't get the value anymore. In other words, she can talk. She just gave up the value of the portions attributable to that provision of the contract. That's exactly right. I would go even further. Again, Judge Thacker's asked me to sort of, you know, enter into a counterfactual, and I'm happy to do that. But I would not rule out Judge Thacker if her lawyer had called the city solicitor a week later and said, look, either pay the balance, pay us the other $31,500, or we want to rescind the agreement and go to trial. I'm going to stand here and represent to this court that Baltimore City would have been okay with that. Well, it's a counterfactual. I wasn't there. I wasn't the city solicitor doing all of that. But there's always that possibility. Frankly, if you were to somehow fashion an order in this case that somehow awarded relief, frankly, it seems to me that notwithstanding the severability clause in the agreement, I think the city would have a pretty good argument to go back to Judge Garvin and say, all right, look, notwithstanding the severability agreement, if she really wants to speak out and doesn't want to lose the money, have her give us back the $31,500 that we paid her, and by the way, which her lawyer took $20,000 of under his contingency agreement, have her return that money to the city, and let's go to trial. Now, that's not what we want to do. That's not what we intended. But if you want to restore the status quo ante, perhaps that's the best way to do it. But again, to get back to a couple of questions, and my time is nearly up, if you impose an order that prohibits a governmental entity from negotiating a value to silence so that a litigant will exercise her right under the First Amendment to remain silent, then what you've done, most respectfully, is you've imposed prior restraint on the individual police officers whose reputational interest is what these non-disparagement clauses are intended to protect. I have one last question. What public interest specifically is served by Overbay being silent? The reputational cost to the officers, okay, remember she sued the officers. They said we didn't use excessive force, so to the extent that she now has money from the city as the insurer of the officers, and she goes on television or goes in the media and trashes the reputation of these officers, it could result in an internal affairs investigation. It could harm their reputations in their communities any number of ways, and it harms their employer, the Baltimore City Police Department. How do we recruit officers if people who sue the city give up their right to prove the terrible allegations that are made by selling with the city and then come back and say, well, you can't enforce that settlement agreement? All right. Those are the interests. Thank you very much. Thank you. Thank you all. Well, with respect, my friend, I think, took some liberties with both the record and in terms of speculating what might have happened in a counterfactual world. I want to address the key point. He was just responding to our questions. I understand, but I want to address the key point here, and it goes to Judge Floyd, your last question. Really, what is the interest? The city didn't merely ask, if we give you a certain amount of money, will you go? Will you drop your lawsuit? We don't dispute that that is a legitimate government interest to seek reasonable settlements. It said, it asked, if we give you a certain amount of money, will you go silently? And that's where it crossed the line, and it crossed the line as Judge Floyd's question to counsel made clear. You can't ask someone, if we give you $10,000, will you agree to vote in a certain way? These are unenforceable contracts, and that's why this is a facial challenge. It's the perniciousness of the request to be silent where there is no legitimate interest. And let me just pick up on the comment made at the end about the individual officers. They were sued for official acts, officers of the government. Their actions are the actions of the government. If their individual interests are impacted by subsequent comments of my client, then as New York Times' V. Sullivan teaches us by illustration, they are entitled to bring a defamation action against a settling plaintiff who has spoken out of school in a way that is, if they can prove it, defamatory. Can you respond to the mootness argument or statement? So the moot, that's part of the reason where it's not developed in the record. It's not moot as far as Ms. Overby's damages claim is concerned. It's not moot as far as we can tell that the bruised request to talk to people as alleged in the complaint filed a couple years ago still remains unrebutted in the record of this case. We did note, by the way, that there were modifications to the policy by a subsequent, actually I think by my friend here in court when he took the position of city solicitor. We actually got rebuked in their brief for trying to raise that to the court's attention as a relevant fact. So I actually appreciate the fact that the city solicitor comes back to that because we do think that the movement of the city reflects the policy at issue back when the bru was trying to get information. Was a problem. Was a problem. And I would suggest also that this notion that the city might try to go back and claw back the money that was paid out to Ms. Overby wouldn't be proper because you can no more enforce an enforceable contract here than you could against a minor for a contract because it's ab initio void. But a couple points. First of all, I mean the fact that they may have changed their policy could be due to a wide variety of things, right? I mean just like the concept of subsequent remedial measures. People do it, you know, it may be because they thought there was something wrong with it. It may be because it's a matter of just operational policy. They had a different philosophy on what to do. That's a whole different question about whether it was illegal, it seems to me. And I guess what I keep coming back to is I understand the Lake James case. We have a balancing test. We got a balancing of the rights of your client to speak which she has the ability arguably to limit herself and whether she can contract about it. It's kind of what we're here about. And you got on the other hand the interest of the city and individuals to forego their opportunity to vindicate themselves and if they settle it not to want someone to continue to talk about the thing that they could have proven arguably was false. Why isn't those just a typical balancing test that the parties are entitled into an agreement on and, you know, that we shouldn't force? Well, Your Honor, you certainly do have to weigh whether, as articulated by the city solicitor and in their briefs, the reasons put forward by the government on balance demonstrate a legitimate interest that outweighs the interest of my clients to, in the case of Ms. Overby, speak or in the case of the Brewer to obtain information from otherwise willing speakers. But we suggest to you that as a matter of constitutional law, the answer should be, and I would just point to the Grossmont case in California where the Ninth Circuit looked at an analogous issue pertaining to a contract to agree not to seek an employment opportunity including running for school board in exchange for settling a case for money. And the Ninth Circuit said that is pernicious. You can seek settlement. That's fine. Government. And you can pay money and get settlement because that's a legitimate interest for the government to not want to expend scarce resources. But it's pernicious to prohibit into perpetuity the ability of someone to run for office and seek election by the electorate. Exactly the same principle applies here, we submit to you, Judge Claude Obama, that it is pernicious for government to say, we can't make you shut up by legislation. We can't make you shut up by executive fiat. But here, have some money and shut up. That is pernicious. And it's something that we suggest to you will always be on the side of unconstitutional no matter how you weigh the balancing effects. And it's simply not enough to say, we're out to protect the interests of individual officers who haven't given up their right to vindicate themselves because they could bring a defamation action if they truly felt that they had been defamed by the misoveries of the world. Thank you, Mr. Wolf. We'll come down and greet counsel and move to our second case.
judges: Henry F. Floyd, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.